Good morning. I'm Mayo Ashley. I represent the defendant Gochis. I have a co-counsel who is representing Mr. Moore in this case, and we're going to try and pretty much split our time, Your Honor. Okay. So you keep track. It counts down, and when it gets to eight, you're starting to nibble into his time. Okay. Okay. That's a challenge. Okay. First off, I must apologize, Your Honor. I set forth one issue in our case, which on reflection, and that's the issue about the pretrial publicity. On reflection, I think that that's just the ranting of a former newspaperman over the decline of print journalism in this country. Okay. Forgiven. Okay. Thank you, Your Honor. Probably well taken. The problem that we have in this case, I think, is that right now there's a dichotomy, if you will, that is frustrating to many. I think it's set forth in this case in particular, and that's the juxtaposition of Federal and State law. And that approaches both our argument regarding the safety valve and, more importantly, the expansion on the instruction in this particular case. Montana, as you know, has legalized medical marijuana. Medical marijuana is also legalized in the state of California. In this particular case, there was some question over the difference between medical marijuana and illegal Federal marijuana. And I think that's set forth in the interchange about the instruction. The instruction, and maybe I can short-circuit this, it seems to me the instruction on the relationship between Federal and State law with respect to marijuana was legally accurate. Do you agree with that?  The, where he says that the, I'm sorry, the manufacture and distribution of marijuana is illegal under Federal law. And both myself and the U.S. government agreed on that. There was some interchange at the outset of the instructions where the judge, and this is in hindsight clearly, but the judge says on page 104 that he felt an instruction on other crimes evidence should be given because, quote, there had been testimony that Goetjes and Moore helped a guy named Thorne raise marijuana. And I objected to that. I said it's not another crime. And this interchange went on between medical marijuana, Federal law, and so forth. And both the government and I agreed on that one issue, that one instruction. But then the judge went on to say I have to explain to you the difference between medical marijuana and other marijuana. Yeah. Now, that's the point of my question. It seems to me that the district judge in explaining that in the instruction got the law right. Do you agree with me on that point? He got what, Your Honor? Do you agree with me that the district judge in explaining to the jury in the instruction the difference between violating Federal law and complying with State law with medical marijuana, he got the law right? He got the law right, but it was an extraneous expression in his interpretation, and he felt that he had to give this additional. So your argument is not that he misstated the law. Your argument is that it was somehow prejudicial for you to have the law accurately stated on this point? No, it's not prejudicial.   He got the law right. Actually, what I'm saying is that the juxtaposition between his extraneous statement and the laws that exist was beyond what he should have instructed on. And what was the harm to your client? To my client? Yes. My client was basically the jury was given this additional question. What I'm saying is the position of the instruction, which was at the end of the instruction, and the extra comment on it, invited the jury to find my defendant guilty. Well, as I read the instruction, it told the jury the fact that Montana might have chosen not to make medical marijuana illegal has nothing to do with the fact I don't see how that prejudices your client. It's just a straightforward explanation to the jury as to the state of the law. What I'm saying, Your Honor, is I felt it was beyond what should have been instructed. Okay. Okay. Just to be clear, what you're saying is after he gives the two sentences that you agreed to, he goes on and says some of you may be aware that Montana law and the California law differ somewhat from the law. Correct. That paragraph, Your Honor. Yeah. Okay. Then the safe valve was disallowed despite my objection to the pre-sentence report and my objection in a sentencing memo. And, again, I have to apologize to the Court. The excerpts of the record, I believe it's index number two, was supposed to be my sentencing memo. As it turns out, it was the sentencing memo of the cooperating witness. And I apologize for that. But the government disallowed, I'm sorry, the court disallowed the request for safety valve. And I would point out in that respect that despite the fact that the government is invited to comment on safety valve or any other objections for that matter, the government did not ever disagree with our interpretation that the safety valve was applicable in this particular case, nor did the PSR report writer, Your Honor. I notice I'm out of time. Okay. Thank you. Good morning, Your Honors. I'm Steve Haddon. I'm here on behalf of Devlin Moore. From the get-go, I will acknowledge that the role we have here is tough to hold. We do have a jury conviction. We are certainly aware of the standards which are utilized with respect to credibility of the witnesses. It's up to the jury. We acknowledge that. We cannot get around that fact. But I think when we look at this case in detail as to what had transpired at trial, and when we look at the big picture, if you will, Devlin Moore should get a new trial. We had this video which was taken in 2007. The video depicts Mr. Thorne, who was a co-defendant who pled guilty and then subsequently testified against the two defendants here who went to trial. It shows them in what I would characterize as a rather large marijuana grow operation, although seeing some of the medical marijuana grow operations that have sprung up in Helena, this was a rather small operation. But nonetheless, there were a bunch of plants in there. They were yucking it up, talking about the various strains of this marijuana, discussing how potent they were going to be, I guess looking forward to the day that they were harvested and smoked. I do not recall, and I don't believe it's the case, if there was any discussion between the two of them of how much this may yield as far as money on the market for selling this. But nonetheless, it was, in our view, prejudicial to Mr. Moore. When the United States, following some discussion at the Foundation, once that was established, when the United States moved to have this introduced, we objected.   We objected to the fact that Mr. Moore had not been involved in any of this. Our position was, is that the prejudicial impact upon Mr. Moore outweighed any probative value that this particular piece of evidence had against Mr. Goetjes. It was pretty probative against Mr. Goetjes. It was, Your Honor, and that is, in our view, that is part and parcel to the problem here, because we have an indictment which is read at the beginning of the case. The indictment says, from some point in 2006 until October, I believe, 8th of 2008, which is when the DEA and what I think is the Southwest Montana Drug Task Force came in and served a search warrant on this GROW operation up there. That's read at the beginning of the case. That's out of the chute from Judge Lovell. And then we get this piece of evidence in, which ties Mr. Goetjes, certainly, and obviously Mr. Thorne, if he would have been, if he would have not fled out, to this GROW operation in 2007. That falls within those parameters. The indictment says, 06 to 08, all three of these guys, Thorne, Goetjes, and Moore, are involved in GROW and DOPE in Garrison, Montana. The judge did give a limiting instruction. Once the cat was out of the bag, if you will, and I knew that the piece of evidence was going to come in, I certainly asked the Court to say, Mr. Moore was not in Montana in 2007. It's only introduced as against Mr. Goetjes. However, our position on that at this stage is the damage was done. I mean, I'm sympathetic in a way. I mean, your basic problem is the problem that is often faced with co-defendants tried together. You really didn't want to be tried next to Mr. Goetjes. Excuse me, next to Mr. Goetjes. Yes, sir. Because some of the evidence was going to be probative against him and not against your client, and you're worried about it sort of infecting. This happens all the time. It does. And, you know, of course, one of the thoughts that crossed my mind early in the case is, do we move for severance? Severance at the district court level, the judicial economy, it is hard to get. In fact, Mr. Ashley did move for severance on behalf of his client. Judge Lovell denied that motion. And with that, I thought, you know, I'm probably going to be, well, I'm not going to use the phrase I was going to use. But it is, in our view, it was problematic for Mr. Moore. Even with the limiting instruction, we just think that it got set in the jury's head and they're like, you know, these guys are up there on the side of this mountain, 20 miles from the nearest town of any size, which is Deer Lodge, which is, you know, I don't know what it is, 6,000, 7,000 people. And they're growing dope. You know, they don't have any water. They don't have any electricity. They don't have any lighting. I think they had a generator kind of in there sometimes. But let's just put them all together. These guys, they're guilty. One's already pled out. The other two are guilty. But the statements were made to the jury quite cleanly that Mr. Moore was not involved at the time that this videotape was made. And the question is, is the jury capable of understanding that and making the distinction? That's the conundrum, Your Honor. Just to clarify, looking at the transcript, it sounds like all of your objections and the court's statement about the limiting purpose of it, that all took place before the jury? You were not a sidebar? Yes. My recollection, Your Honor, I'm trying to get the synapse popping here, but I believe it was an open court. I do not believe we had a sidebar. But I'm just noticing that there's a lot of colloquy on the basis of the objection, including why you felt it would be prejudicial to Mr. Moore. Yes. But had the jury heard all that? And my recollection, Your Honor, is, yes, that was an open court. Okay. We didn't have a lot of sidebars in that case. So they heard your position on why? Absolutely. Okay. Absolutely.    I'm sorry. You have to stop. I cannot get around that. I won't belabor the other points that we've raised in our brief, of course, that are there for Your Honor's reading. I think just if one point to make on the Herrera-Gonzalez case with respect, we had differing testimony. And but Moore's conduct, at least the explanation for Moore's conduct, is it was one could draw innocence and guilt from it. And I think the Herrera-Gonzalez case says it where you've got innocence,  And so I think that's a point that's got to decide for the defendant. Okay. Just so you can plan, we'll hear from the government, and we'll allocate one minute each for rebuttal if you choose to take it. If necessary. Thank you, Your Honor. Thank you, gentlemen. Good morning. Paulette Stewart for the United States. Let me address Mr. Moore's video discussion first. The discussion that was had with the district court regarding the video, as well as the district court's limiting instruction was all in open court. I've got it here. I just read the transcript. Yes, Your Honor. But, yes, that was all in open court. So the jury heard Mr. Moore's concerns and all that. That was all out there in the open. Okay. As Your Honors also know, that's reviewed for an abuse of discretion. Obviously, the video was relevant evidence. There was some discussion of that video. The video was played. And, really, the assumption is the jurors understood the instruction, listened to the instruction. At the end of the case, when the case was wrapped up and talked about, it was very clear that the discussion about Mr. Moore was all 2008. At no time, and I was trial counsel, at no time did I imply that Mr. Moore joined before 2008. There wasn't any testimony from any of the witnesses that he joined before 2008. So it was very clear that this 2000 video was solely against Mr. Goetsch's. Regarding the, I guess, the jury instruction that concerns Mr. Goetsch's, Your Honor, Mr. Fletcher is correct that this is a correct statement of law. I mean, not only is it a federal offense to conspire to grow and conspire to sell marijuana, but if there's any question as to what law applies in this case, it's federal law. It's not Montana state law. It's not California state law. This is not a medical marijuana grow. Despite the medical marijuana discussion that occurred during trial, this is a federal case, federal law applies, period. We'll have to wait and see what Prop 19 does in California. Well, we've also been told that medical marijuana is back on the agenda for the Montana legislature as well. But there's no error and there's no prejudice, there's no legal harm to the defendants as a result of the instruction given by the district court. And what the district court was trying to do was make the law very simple and clear for the jury who had to apply the facts. Was there any testimony by the defendant's side that this was medical marijuana? There was not testimony that this was medical marijuana, but there was a lot of testimony by Mr. Gochis and questions by counsel regarding medical marijuana. That, you know, he had medical marijuana at home, that Mr. Gochis had medical marijuana at home, that he had been part of a medical marijuana grow in California, that he had his medical marijuana card. And did you object to any of that evidence coming in as being irrelevant? You know, Your Honor, I did not. Okay. I did not. I'm thinking of a trial that took place in front of Judge Breyer in San Francisco some years ago, and Judge Breyer kept everything out that had anything to do with medical marijuana as irrelevant. And the defendant filled the courtroom with people in wheelchairs. In all frankness, I probably should have objected. Well, I'm not sure you should have, and I'm just curious whether or not you could have, but I'm not sure you should have. But I did not. I didn't because we weren't in state court, for obvious reasons. I didn't feel that him talking about being in the medical marijuana field or grows harmed my case to the point where, absent jury instruction like the court gave, that it hurt the government's case. Finally, I will turn to the safety valve issue. The PSR writer actually twice included statements regarding Mr. Gochis's lack of, in one part it's lack of acceptance of responsibility, but he basically says the defendant does not truthfully admit the conduct of his convictions. That's in Gochis's original PSR in paragraph 18. Additionally, then, in the addendum, the PSR states, which is right out of the guidelines, 5C1.2A5, that the defendant did not truthfully provide to the government all information and evidence that he had concerning the offense or offenses that were part of the same course or common scheme or plan, and that's because Gochis never said at any point prior to the sentencing hearing, yes, I participated in these conspiracies. Even through the sentencing hearing, it was still, I deny participation in these conspiracies. And in order to be eligible for the safety valve, he needs to have been entirely forthcoming. Yes, Your Honor. And our position is he was not entirely forthcoming. And then finally, I will briefly note on regarding the sufficiency of the evidence. It's obviously our position there was more than sufficient evidence to convict Mr. Moore, who is the only defendant challenging the sufficiency of the evidence. We have Mr. Moore's admissions to Agent Dunlap, that he was helping to cultivate the marijuana, he expected to profit from the sale of the 08 marijuana, and that he also, when talking to Agent Dunlap about the grow, referred to it as their grow. He didn't refer to it as Mr. Thorne's grow, but as their grow in a collective sense. There was some brief testimony from Anita Thorne that she knew there was some type of an agreement. She didn't know what the particulars were. And then obviously there was a lot of testimony from the cooperator, Billy Jo Thorne, regarding Mr. Moore's participation in the conspiracies. And absent any other questions, I will sit down. Okay. Thank you. Your Honor, we were talking about the relevancy of the comments about the medical marijuana grow. That was necessary, at least in my opinion, I think the government's opinion, because the culls, if you will, that apparently started this operation, or at least some of the culls were acquired from a grow, legal marijuana grow, in the state of California. That's where my client worked for some time. He was not there originally. And so we had to say, well, this is why he was involved in this thing. And once you introduce the subject of medical marijuana, it seems to me all the stronger reason why the district judge acted appropriately in giving this instruction that clarifies for the jury the relationship between Federal and State law. That's correct, Your Honor. Yeah. Okay. Additionally, there was no date on the video. We don't know when that was taken. And the judge, in refusing the sentence, the safety valve, the judge leaned on that to some degree, saying that my client had more knowledge than anybody else. He had that knowledge of marijuana because he had been going legally for quite some time. The denial of the safety valve is still an objection. And in that respect, Your Honor, the government not only ever questioned my position related to the safety valve, but they gave the safety valve to the cooperating witness despite the fact that on two occasions on the stand, he admitted that he had had guns on the property and that the guns that they found on the property that day were his, and he still got the safety valve. Thank you. Thank you. A very quick point, Your Honors. Ms. Stewart discussed an admission by Mr. Moore to Special Agent Dunlop, who was a DEA agent. We certainly disputed that in Mr. Moore's testimony, again, recognizing that that's a potential jury issue. However, when we're looking at the sufficiency of the evidence here, I believe Ms. Stewart said it had to do with the division of the profits or the proceeds from the sale of this grow. So that question or a question along those lines was posed to Mr. Thorne by Mr. Ashley about what was the agreement with respect to the monies. I'm paraphrasing here to agree. He danced around the issue a little bit and eventually said, I can't honestly answer that. Thank you. Okay. Thank you very much. Thank you, both sides. The case of United States v. Goetting and Moore is now submitted for decision. That concludes our calendar for this morning. We'll be in adjournment until tomorrow. Thank you.
judges: Bury, Fletcher W. , Fisher